# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| JAMES SHOREY, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-1163 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| AMCOL SYSTEMS INC., | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff James Shorey is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that such debt allegedly from a consumer transaction that included agreements to defer payment.

6. Defendant Amcol Systems Inc. ("Amcol") is a collection agency with its principal place of business located at 111 Lancewood Road, Columbia, South Carolina 29210.

7. Amcol is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Amcol is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Amcol is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

10. On or about May 28, 2020, Amcol mailed a debt collection letter to Plaintiff. A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debts referenced in Exhibit A were incurred as the result of a transaction for personal medical services with an agreement to defer payment. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred … in exchange for medical services …. Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.")

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A is the first written communication that Defendant mailed to Plaintiff regarding the alleged debts referenced in Exhibit A.

15. Exhibit A contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.

Exhibit A.

16. The bottom of the first page of Exhibit A also contains a payment remittance slip that includes the following:

> Date: May 28, 2020
> Account #: ▓▓▓▓1903
> See Reverse Side for Account Details
>
> | Total Due | $ 168.00 |
>
> Phone: (803) 217-3800 • Toll Free: (800) 849-8500

Exhibit A.

17. The payment remittance slip in Exhibit A states that the debt has been assigned an "Account #" ending in 1903.

18. The reverse side of Exhibit A states:

| Creditor Name | Account # | Creditor Reference # | Service Date | Total Due |
|---|---|---|---|---|
| Columbia St. Mary's Milwaukee | ▮1903 | ▮1299 | 12/04/19 | $10.00 |
| Columbia St. Mary's Milwaukee | ▮1904 | ▮1299 | 10/29/19 | $158.00 |

19. The reverse side of <u>Exhibit A</u> states that the debt is associated with two separate account numbers: the first account is associated with an "Account #" ending in 1903, associated with a "Service Date" of 12/04/19 and a "Total Due" of $10.00; the second account is associated with an "Account #" ending in 1904, associated with a "Service Date" of 10/29/19 and a "Total Due" of $158.00.

20. <u>Exhibit A</u> is false, deceptive, misleading, and confusing to the unsophisticated consumer.

21. An unsophisticated consumer would not know whether the right to dispute referenced on the first page referred only to the debt with an Account # ending in 1903 or also referred to the debt with an Account # ending in 1904. Indeed, because the payment remittance slip and "registration code" on the first page of <u>Exhibit A</u> reference only the account ending in 1903 and the account ending in 1904 on the reverse side of <u>Exhibit A</u> is associated with a "Service Date" almost exactly 30 days before the "Service Date" for the account ending in 1903, an unsophisticated consumer would be confused about whether any right to dispute the account ending in 1904 had lapsed.

22. Further, because the payment remittance slip in <u>Exhibit A</u> only referenced the account ending in 1903, the consumer would be confused about whether a payment would be properly processed and applied to both debts.

23. Moreover, including the account number ending in 1903 as the only account in the payment remittance slip would lead an unsophisticated consumer to believe that partial payments

4

would be applied to the account ending in 1903 before being applied to the account ending in 1904. Indeed, this method of applying payments to the account with the lowest balance first improves the credit score more than applying payments to the account with the highest balance first because it expedites removal or resolution of adverse tradelines from the consumer's credit score.

24. Upon information and belief, Amcol's standard policy and agreement with the creditor requires Amcol to apply payment to the oldest account (the account ending in 1904) first unless the consumer expressly informs Amcol to apply payments in a different manner. Indeed, applying payments to older items first allows creditors to keep their "fresher" accounts live, which improves the collection profile because there is more time before the statute of limitations on the debt runs or the time for credit-reporting lapses.

25. Moreover, debt collectors and creditors are especially motivated to apply a partial payment to a medical debt older than six months (i.e., the account ending in 1904) as opposed to a fresh medical debt (i.e., the account ending in 1903) because medical debts are not eligible to appear on a credit report at all until at least six months after delinquency.

26. Including a single "Account #" in the payment remittance slip misleads the consumer to believe that the debt collector will apply partial payments to that account before other accounts referenced in the letter and forego their right to affirmatively direct the debt collector to apply the payments in the manner that most benefits the consumer as opposed to the manner that most benefits the creditor and the debt collector. *See* 15 U.S.C. § 1692h.

27. Plaintiff was confused and misled by Exhibit A.

28. The unsophisticated consumer would be confused and misled by Exhibit A.

5

### *The FDCPA*

29. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also*

6

*Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

30. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

31. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047,

2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

32. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

33. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

34. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

35. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

36. 15 U.S.C. § 1692g requires that the debt collector provide the consumer with a debt validation notice that effectively informs the unsophisticated consumer about their right to dispute the debt during a thirty-day period following the consumer's receipt of the notice.

37. 15 U.S.C. § 1692h states, in part, "if any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions."

### *The WCA*

38. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

39. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

40. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

41. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

42. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

43. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

44. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

45. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

46. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

47. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

48. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

10

49. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten[ action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

50. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

51. Although the FDCPA does not authorize injunctive or declaratory relief, *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 507 n.3 (D. Md. Mar. 11, 2013), these forms of relief are available under the WCA. Wis. Stat. §§ 426.109(1); 426.110(4)(e); 426.110(6)(b).

52. The WCA expressly authorizes individual actions to enjoin "any person who in . . . enforcing consumer credit transactions engages in … False, misleading, deceptive, or unconscionable conduct in enforcing debts … arising from consumer credit transactions." Wis. Stat. § 426.110(2)(c); *see* Wis. Stat. § 426.110(3).

53. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 … or by a violation of the federal consumer credit protection act … [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

54. The WCA authorizes customers to bring class actions for injunctive relief to cure violations of Wis. Stat. § 427.104(1).

## COUNT I – FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Including a single "Account #" in the payment remittance slip confuses the consumer about the processing of payments and misleads the consumer to believe that the debt collector will apply partial payments to that account before other accounts referenced in the letter and forego their right to affirmatively direct the debt collector to apply the payments in the manner that most benefits the consumer as opposed to the manner that most benefits the creditor and the debt collector.

57. Including a single "Account #" in the payment remittance slip confuses and misleads the consumer about the extent of her rights to dispute the debt and whether those rights extend to the account that was not referenced in the remittance slip.

58. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692g, and 1692h.

## COUNT II -- WCA

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. Including a single "Account #" in the payment remittance slip confuses the consumer about the processing of payments and misleads the consumer to believe that the debt collector will apply partial payments to that account before other accounts referenced in the letter and forego their right to affirmatively direct the debt collector to apply the payments in the manner that most benefits the consumer as opposed to the manner that most benefits the creditor and the debt collector.

61. Including a single "Account #" in the payment remittance slip confuses and misleads the consumer about the extent of her rights to dispute the debt and whether those rights extend to the account that was not referenced in the remittance slip.

62. <u>Exhibit A</u> violates the FDCPA.

63. Defendant is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

64. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## **CLASS ALLEGATIONS**

65. Plaintiff brings this action on behalf of a class, consisting of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by Defendant in the form of <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt associated with two different account numbers, (d) where one of the accounts was associated with a Service Date between 30 and 60 days earlier than the account referenced in the remittance slip, (e) and the letter wa mailed between July 28, 2019 and July 28, 2020, inclusive, (f) and was not returned by the postal service.

66. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

67. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA and/or the WCA.

68. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

69. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

70. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

71. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

72. such other or further relief as the Court deems proper.

Dated: July 28, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com